# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS



| | |
|---|---|
| Kang Lu<br><br>*Plaintiff,*<br><br>v.<br><br>GINA K. KWON, in her official capacity as Secretary of the Executive Office of Public Safety and Security ("EOPSS"),<br><br>ANDREA JOY CAMPBELL, in her personal and official capacity as Attorney General of Massachusetts,<br><br>*Defendants.* | Civil Action No. _____<br><br><br>**COMPLAINT**<br><br>**FOR**<br><br>**DECLARATORY JUDGMENT** |

## INTRODUCTION

1.  This action seeks declaratory judgement in a case of actual controversy arising under the **Constitution**[1]. Its purpose is to terminate a controversy, remove uncertainty, and secure determinations of right, duty, status, or other legal relations under the law, statutes or administrative regulations, including determinations of any question of construction or validity thereof, so that I may, at all times, find my security in the laws[2]. (Please reference case **1:23-cv-12045**, filed in this Court, on September 1, 2023, which was dismissed because "Younger abstention applies." See Electronic Order, Doc. No. 49, issued on January 11, 2024.)

---

[1] **Blue text** is hyperlinked to references in electronic copies.

[2] **Massachusetts Constitution**: "…every man may, at all times, find his security in [the laws.]"

Page 1 of 16

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction pursuant to **28 U.S.C. § 1331**, because this action arises under the Constitution or laws of the United States.

3. This action seeks a declaratory judgment and further necessary or proper relief in a case of actual controversy, pursuant to the Declaratory Judgment Act, **28 U.S.C. §§ 2201 and 2202**.

4. This action is brought in the United States District Court for the District of Massachusetts, an Article III court of record established by Congress pursuant to **28 U.S.C. § 132**.

5. Venue is proper in this District under **28 U.S.C. § 1391(b)(1)** because all defendants reside in the State in which this District is located.

## PARTIES

6. I am **Kang Lu**, the party bringing the suit[3]. I am one of the people[4], and a Citizen of New Hampshire as contemplated by **Article IV, Section 2 of the United States Constitution**. I live wherever I sojourn, and I receive mail through my

---

[3] "The party bringing the suit is master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 23 (1913).

[4] *District of Columbia v. Heller*, 554 U. S. 570, 580 (2008): The term [people] unambiguously refers to all members of the political community, not an unspecified subset. As we said in *United States v. Verdugo-Urquidez*, 494 U. S. 259, 265 (1990): "…'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."

private agent at 5753 Highway 85 North, #2442, in Florida, 32536. I may be reached at 413-300-2102, or by emailing *LibertyWithoutLicense@gmail.com*.

7.     Defendant **GINA K. KWON** is the Secretary of the Massachusetts Executive Office of Public Safety and Security ("EOPSS"). Her office is located at 1 Ashburton Place, Suite 2133, Boston, MA 02108. Her publicly listed contact information includes: phone 617-727-7775 and Email: *eopsinfo@state.ma.us*.

8.     Defendant **ANDREA JOY CAMPBELL** is the Attorney General of Massachusetts ("AG Campbell"). Her office is located at 1 Ashburton Place, 20th Floor, Boston, MA 02108. Her publicly listed contact information includes: phone 617-727-2200 and Email: *AGOscheduling@mass.gov* (from *google.com*).

## ACTUAL CONTROVERSY

9.     An actual and ongoing controversy exists because the defendants and their subordinates and employees, have willfully subjected me, and continue to subject me, under color of statutes, to the deprivation of my right "to keep and bear Arms" secured by the **Constitution** and laws, within the meaning of **42 U.S.C. § 1983**. The defendants intentionally misapply and willfully misuse statutory licensing requirements on a profession for gunsmiths, security guards and other public safety and security professionals as a pretext, and under color of law, to deprive me of individual rights secured by the plain text of the **Second Amendment**.

## FACTUAL ALLEGATIONS

10. On June 6, 2020, my son and I were seeking our safety and happiness in the enjoyment of our right "to keep and bear Arms" while "target shooting" on our farm in rural Massachusetts when we unexpectedly encountered a convicted felon who had trespassed onto our private property.

11. Within minutes, Westfield police officers arrived and, after a brief investigation including a search and seizure and after confirming that I was "SA FELY [sic] SHOOTING ON [MY] PROPERTY" with "targets properly set up in the area described…and that [I] did have an active license to carry in New Hampshire," the officers let me to go free. See **Plaintiff's Exhibit 1**: Officer's Personnel Narrative and 911 police log.

12. Nevertheless, I was indicted and prosecuted for one count of assault with dangerous weapon (**G. L. c. 265, § 15B**), one count of unlicensed possession of large capacity feeding device (**G. L. c. 269, § 10(m)**), two counts of unlicensed possession of a firearm (**G. L. c. 269, § 10(a)**), and one count of unlicensed possession of ammunition (**G. L. c. 269, § 10(h)(1)**). Reference <u>Commonwealth v. Kang Lu</u>, Hampden County Superior Court, Doc. No. 2179 CR 67.

13. At jury trial, I was acquitted of the first three charges. The last two counts were later dismissed following the decision in *Commonwealth v. Dean F. Donnell*, SJC-13561 (March 11, 2025), in which the "may issue" nonresident firearm licensing scheme was held to be facially unconstitutional.

14. Following dismissal of that case, I have been deemed "eligible to possess or receive a firearm" by the FBI Criminal Justice Information Services (CJIS), see **Plaintiff's Exhibit 2**. Then on September 1, 2025, the Hampden County Superior Court ordered the return of my property seized during the outset of the case, including two pistols, and five magazines each with 15-rounds of ammunition.

15. However, as a direct and proximate result of the criminal prosecution, I suffered substantial and irreparable harm, including four days of pretrial detention, approximately 525 days of GPS monitoring and travel restrictions, prolonged suspension of my right "to keep and bear Arms," loss of work, and material impairment of my ability to obtain or maintain employment for over five years.

16. Moreover, an actual controversy persists because the defendants and their employees continue to threaten me with the seizure of my private property, arrest, prosecution, and incarceration if I were to exercise my individual right "to keep and bear Arms" without first obtaining a license to carry firearms from them.

17. It is my wish to exercise my fundamental right "to keep and bear Arms" during my frequent travels into Massachusetts, in the same manner as I do in New Hampshire and in the 28 other states[5] where bearing Arms without a license is a normal and uneventful exercise of liberty protected by law.

---

[5] 29 "permitless carry" states: Alabama, Alaska, Arizona, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Mississippi, Missouri, Montana, Nebraska, New Hampshire, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, West Virginia, and Wyoming.

## CLAIM FOR DECLARATORY RELIEF

18. This action for declaratory judgment may be construed as an as-applied challenge[6] "brought against defendants who, claiming to act as officers of the State, and under color of a statute which is valid and constitutional, but wrongfully administered by them, commit, or threaten to commit, acts of wrong or injury to the rights and property of the plaintiff, or make such administration of the statute an illegal burden and exaction upon the plaintiff.'" *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 136 (1984).

19. "The declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity;" *Steffel v. Thompson*, 415 U.S. 452, 480 (1974), and "where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." *Medimmune, Inc. v. GenenTech, Inc.*, 549 U.S. 118, 128-29 (2007). "Instead, we have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent. Specifically, we have held that a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the defendants], and there exists a credible threat of prosecution thereunder.'" *List v. Driehaus*, 573 U.S. 149, 159 (2014).

---

[6] I attempted to apply for a license to carry firearms, but my application was denied because I could not afford the application or fingerprint fees, or the cost of a Firearms Safety certificate.

20. As such, the standing and ripeness requirements of jurisdiction are met, because "the injury threatened by…unconstitutional [enforcement under color of licensing requirements on a profession] is present and real…and will become irreparable if relief be postponed to that time, a suit to restrain future enforcement …is not premature." *Pierce v. Society of Sisters*, 268 U.S. 510 (1925).

21. Furthermore, if I were prosecuted again, the judicial power of the United States would not protect me. As this Court "may not grant an injunction to stay proceedings in a State court," **28 U.S.C. § 2283**, and "Federal courts will not enjoin pending state criminal prosecutions except under extraordinary circumstances," see *Younger v. Harris*, 401 U.S. 37, 37 (1971).

22. Therefore, this Court has original jurisdiction arising under the **Constitution** to terminate a controversy, remove uncertainty, and "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought" pursuant to the Declaratory Judgment Act, see **28 U.S.C. § 2201**.

23. For the following reasons, I respectfully request that this Court declare that the Massachusetts license to carry firearms is an unequivocally constitutional requirement on a profession, subject to an occupational fee, which entitles the holder thereof to particular and exclusive privileges, that arises from the consideration of services rendered to the public, and that is distinct from my fundamental right "to keep and bear Arms" for myself:

## REQUIREMENT ON A PROFESSION

24. **Firstly**: to obtain a license to carry firearms in Massachusetts, **G. L. c. 140, § 131(i)** provides that the application fee[7] is $100, "which shall be payable to the licensing authority." The term "licensing authority" is explicitly defined[8] by **G. L. c. 6, § 172N** as one "with the authority to impose occupational fees or licensing requirements on a profession."

25. Accordingly, the license to carry firearms is plainly a licensing requirement on a profession, subject to an occupational fee, but the defendants "may not impose a charge for the enjoyment of a right granted by the Federal Constitution." *Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943).

26. Also, because the flat fee and other unavoidable costs of licensing invariably burden the poor more than the rich, defendants "are prohibited by the Equal Protection Clause from discriminating between 'rich' and 'poor' as such in the formulation and application of their laws." *Douglas v. California*, 372 U.S. 353, 361 (1963). "A State can no more discriminate on account of poverty than on account of religion, race, or color." *Griffin v. Illinois*, 351 U.S. 12, 17-18 (1956). Therefore, the licensing fee can only be justified as a requirement on a profession, not as a charge for the enjoyment of a right secured by the **Constitution**.

---

[7] Fee: A charge fixed by law for services of public officers or for use of a privilege under control of government. **Black's Law Dictionary**, 4th Edition, Pg 740.

[8] "When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning." *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000).

27. **Secondly**: Defendant Kwon is the secretary of EOPSS, which is an executive branch of the Massachusetts government, see **G. L. c. 6A, § 2**. Under **G. L. c. 140, § 131(h)**, Secretary Kwon has the authority to "promulgate regulations to carry out" the state's statutory scheme[9] for the license to carry firearms. Where **G. L. c. 30A, § 1(5)** defines such "regulations" as those "adopted by [the] agency to implement or interpret the law enforced or administered by it."

28. One such regulation promulgated by Secretary Kwon is **803 CMR 2.01**. It is published by an agency within EOPSS, the Department of Criminal Justice Information Services, see **G. L. c. 6A, § 18**. This regulation provides that the "Purpose and Scope" of the Criminal Offender Record Information (CORI) background check is for "the purpose of evaluating applicants for employment, volunteer opportunities, or professional licensing."

29. The issuance of the license to carry firearms is inextricably dependent on passing this background check, and although the defendants may require a background check for "the purpose of evaluating applicants for employment, volunteer opportunities, or professional licensing," no law conditions the exercise of my fundamental right "to keep and bear Arms" on my submission to a background check.

---

[9] "Discussion of the statutory scheme governing licensing of firearms. ... 1. Statutory scheme. ... The historical aim of licensure generally is preservation of public health, safety, and welfare by extending the public trust only to those with proven qualifications." *Mirko Chardin v. Boston Police Commissioner*, 465 Mass. 314, 315 (2013).

30. **Thirdly**: In order to obtain a license to carry firearms, an applicant is required to submit a full set of fingerprints. G. L. c. 6, § 172B.5 "require[s] applicants for licenses in specified occupations to submit a full set of fingerprints." While the defendants may require fingerprinting for a license to carry firearms in specified occupations, no law compels the submission of fingerprints for the enjoyment of my individual right "to keep and bear Arms."

31. **Fourthly**: As Secretary of the Executive Office of "*Public Safety and Security*," Defendant Kwon is empowered to regulate various officers, employees, private investigators, security guards, gunsmiths, firearms retailers, and other persons whose profession or occupation requires them to carry or possess firearms in service of the "*Public Safety and Security*," but no legislation authorizes her to regulate or license my private, fundamental right "to keep and bear Arms." If such power ever existed, then under the major questions doctrine, Defendant Kwon must point to clear legislative authorization for the authority she claims, see *West Virginia v. E.P.A.*, 597 U.S. ___ (2022).

32. Where the legislation is silent on licensing "the right of the people to keep and bear Arms," no such power exists. As the Supreme Court has explained: "we have not traveled, in our search for the meaning of the lawmakers, beyond the borders of the statute." *United States v. Great Northern Railway Co.*, 287 U.S. 144, 154 (1932). "The law is the definition and limitation of power." *Yick Wo v.*

*Hopkins*, 118 U.S. 356, 370 (1886), and "If the power is not in terms granted…it does not exist." *Legal Tender Cases*, 110 U.S. 421, 468 (1884).

33. **Fifthly**: The Legislature's decision to refrain from regulating the rights secured by the **Constitution** "is entitled to deference by courts. Whether a statute is wise or effective is not within the province of courts. *Commonwealth v. Lammi*, 386 Mass. 299, 300 (1982). 'It is not for this court to judge the wisdom of legislation or to seek to rewrite the clear intention expressed by the statute.' *Mellor v. Berman*, 390 Mass. 275, 283 (1983). 'Our deference to legislative judgments reflects neither an abdication of nor unwillingness to perform the judicial role; but rather a recognition of the separation of powers and the 'undesirability of the judiciary substituting its notions of correct policy for that of a popularly elected Legislature.' *Lammi*, supra at 300, quoting *Zayre Corp. v. Attorney Gen.*, 372 Mass. 423, 433 (1977)." *Commonwealth v. Harry W. Leno*, 415 Mass. 835 (1993).

34. **Sixthly**: If any interpretive doubt remains as to whether the license to carry firearms constitutes a requirement on a profession for persons carrying firearms in the performance of their duties (see **G. L. c. 41, § 98**; **G. L. c. 147, §§ 8A, 29, and 29A**), for persons carrying on the business of a gunsmith or retail firearm sales (see **G. L. c. 140, § 122**), or instead subjects my individual right secured by the **Constitution** to a license, this Court is respectfully invited to apply the principle of constitutional doubt and the doctrine of constitutional avoidance to make the distinction.

35. Under that principle, "When legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict." *United States v. Hansen*, 599 U.S. 762, 781 (2023). "Where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Jones v. United States*, 526 U.S. 227, 239 (1999) quoting *United States v. Delaware & Hudson Co.*, 213 U.S. 366, 367 (1909).

36. If grave and doubtful questions arise when the license to carry is construed as a restraint on constitutional rights, but it is in harmony with the **Constitution** as a requirement on a profession, then this Court's "duty is to adopt the latter."

37. **Seventhly**: "It is elementary law that every statute is to be read in the light of the constitution." *McCullough v. Com. of Virginia*, 172 U.S. 102, 112(1898), and **Article VI** of the **Massachusetts Declaration of Rights** reads: "No man, nor corporation, or association of men, have any…particular and exclusive privileges, distinct from those of the community, than what arises from the consideration of services rendered to the public…" The licensing statute, **G. L. c. 140, § 131(a)**, plainly states: "A license shall entitle a holder thereof…to possess and carry firearms." This *entitlement* is a "privilege conferred in the Commonwealth through a…license," see *Commonwealth v. Harris*, 481 Mass. 767, 775 (2019).

38. Thus, the licensed entitlement to carry firearms is plainly a "particular and exclusive privilege" and a requirement for professionals rendering services to the

public. This entitlement is clearly distinct from the pre-existent right "to keep and to bear Arms." See *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) quoting *United States v. Cruikshank*, 92 U. S. 542, 553 (1876): "The very text of the Second Amendment implicitly recognizes the pre-existence of the right and… '[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence.'"

39. **Eighthly**: This Court may examine the licensing statutes and practices of other states to determine the intended application of the Massachusetts firearms licensing scheme. For example, in *NYSRPA v. Bruen*, 597 U.S. __ (2022), *D.C. v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010), the Supreme Court surveyed how various states had treated the right to keep and bear Arms in their own constitutions and statutes; in *United States v. Turley*, 352 U.S. 407 (1957), the Court reviewed various state criminal-theft statutes to decide whether "stolen" in the federal statute should be interpreted narrowly or broadly; likewise in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), the Court examined the foreclosure laws of all 50 states to determine what Congress must have meant by "reasonably equivalent value."

40. In examining the firearms licensing statutes of the several states, it is immediately apparent that with the exception of Vermont, which does not issue carry permits because none has ever been required, all other states, even those like

New Hampshire where "permitless carry" or "constitutional carry" is the norm, a license to carry or equivalent may still be obtained if specifically applied for.

41. For example, in Kansas, another "permitless carry" state, **K.S.A. 75-7c03** provides: "The availability of licenses to carry concealed handguns under this act shall not be construed to impose a general prohibition on the carrying of handguns without such license, whether carried openly or concealed, or loaded or unloaded."

42. The application process in Kansas is operationally identical to the licensing scheme in Massachusetts, including payment of a $100 fee, passing a safety course, fingerprinting, and undergoing a background check. The primary purpose of licensing in these otherwise "permitless carry" states is for public security professionals. The only difference here, is that the defendants are misusing their licensing authority to willfully subject me to the deprivation of my rights under color of "licensing requirements on a profession." See G. L. c. 6, § 172N.

43. **Finally**: "The historical aim of licensure generally is preservation of public health, safety, and welfare by extending the public trust only to those with proven qualifications." *Mirko Chardin v. Boston Police Commissioner*, 465 Mass. 314, 315 (2013). The statutory scheme governing the licensing of firearms is, like any other requirements on a profession, structurally and operationally identical to other professional licenses issued by the State, including licenses for preparing and serving food (common victualler's license), child care, or the practice of medicine, dentistry, or law in Massachusetts:

# REQUIREMENTS ON A PROFESSION

Every fundamental, private right has a corresponding licensed entitlement, which may consist of "particular and exclusive privileges, distinct from those of the community, than what arises from the consideration of services rendered to the public," see Article VI of the Massachusetts Declaration of Rights. Thus, the license to carry firearms is a requirement on a profession, comparable to any other license issued by the state.

| LICENSES | Food Service | Doctor | Dentist | Child Care | Attorney | License to carry firearms |
|---|---|---|---|---|---|---|
| Fundamental Right | Feed oneself and family | Birth, life, self-care | Self-care | Parental care | Act for oneself | Bear Arms for self-defense |
| Licensed Entitlement | dispensing food or beverage | Medical care | Dentistry | Child care | Practice of law | Carry firearms in the performance of duties or a business |
| Licensing Statute | G. L. c. 140, § 2 | G. L. c. 112, § 2 | G. L. c. 112, § 45 | G. L. c. 15D, § 6 | G. L. c. 221, § 37 | G. L. c. 140, § 131 |
| Licensing Agency* | Boards in cities and towns | BRIM | BRID | EEC | SJC | EOPSS |
| Licensing Fee | $25-100 | $600 | $60 | $100 | $800 | $100 |
| Training or education | Food Protection Manager Certification | medical school and residency | school and examination | required EEC training | law school and clerkship | Basic firearms safety certificate |
| Background Check | Often Required | Required | Required | Required | Required | Required |
| Incarceration for unlicensed activity | 3 mos G. L. c. 140, § 21F | 6 – 12 mos G. L. c. 112, § 6 | 6 – 12 mos G. L. c. 112, § 52 | 2.5 yrs G. L. c. 15D, § 15 | 6 – 12 mos G. L. c. 221, § 41 | 18 mos minimun G. L. c. 269, § 10 |

*BRIM: Board of Registration in Medicine  
BRID: Board of Registration in Dentistry  
EEC: Department of Early Education and Care  
SJC: Supreme Judicial Court

44.  **WHEREFORE**, I, Plaintiff Kang Lu, respectfully request that this Court:

I.  **Declare** that the license to carry firearms is "a requirement on a profession," which "shall entitle a holder thereof" to the "particular and exclusive privilege" of serving the public; and

II.  **Grant** such further necessary or proper relief under **28 U.S.C. § 2202**, including injunctive or other equitable relief where appropriate; and

III.  **Award** costs and damages to be determined at trial, currently estimated at $2,000,000.

## JURY DEMAND

45.  Pursuant to **Fed. R. Civ. P. 38(b)** and as preserved by **Fed. R. Civ. P. 57**, I hereby demand a trial by jury on all issues so triable. Because this action presents legal claims and factual disputes that would have been triable by a jury at common law, I am entitled to have all questions of fact determined by a jury.

Dated: Dec. 3rd, 2025.                    Respectfully submitted,

/s/ *Kang Lu*

Kang Lu, *in propria persona.*
5753 Highway 85 North, #2442
Crestview, Florida, 32536
*LibertyWithoutLicense@gmail.com*
Phone: 413-300-2102.