UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KANG LU,

Plaintiff,

v.

GINA K. KWON, in her official capacity as Secretary of the Executive Office of Public Safety & Security; and ANDREA JOY CAMPBELL, in her personal and official capacity as Attorney General of Massachusetts,

Defendants.

C.A. No. 1:25-cv-13649

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Attorney General Andrea Joy Campbell (in her official and individual capacity) and Secretary of Public Safety and Security Gina K. Kwon (in her official capacity)[1] ("Defendants") hereby move to dismiss Plaintiff Kang Lu's ("Plaintiff") Complaint, which seeks a declaration that Massachusetts' firearm licensing statute is unconstitutional as applied to him because: (1) the requirement that he obtain a firearms license violates his Second Amendment right to keep and bear arms, and (2) the requirement that he pay a $100 license fee violates the Equal Protection Clause of the Fourteenth Amendment. *See* Compl. ¶¶ 9, 17, 23, 26.

[1] While the docket states Secretary Kwon is sued in her individual capacity, the caption of Plaintiff's Complaint lists Secretary Kwon as a defendant only in her official capacity and does not mention any act or omission by her. *Compare* Compl. at 1 *with* Docket. Consequently, the Court should consider Secretary Kwon to be sued only in her official capacity. *See also Powell v. Alexander*, 391 F.3d 1, 22 (1st Cir. 2004) (court looks to the course of the proceedings, substance of the complaint, and relief sought to determine whether party is sued in individual capacity). To the extent the Court might disagree, Secretary Kwon is entitled to qualified immunity in her individual capacity. *See infra* at 9-11.

The Complaint must be dismissed for two reasons. First, Attorney General Campbell must be dismissed from this case in her individual capacity because the Complaint plausibly alleges no act or omission by her and she is not the real party in interest; moreover, she would be entitled to qualified immunity even so. Second, the Complaint must be dismissed because it fails to state a claim upon which relief may be granted under any set of facts. The United States Supreme Court has determined that "shall-issue" licensing regimes such as the one enacted by the General Court fit comfortably within the Nation's history and tradition of firearm regulation and are therefore consistent with the Second Amendment. Moreover, charging $100 for a firearms license does not violate the Equal Protection Clause because Plaintiff does not allege any law discriminates on the basis of a suspect classification and the fee, which only incidentally burdens the right to bear arms, is rationally related to a legitimate state interest.

## STATUTORY BACKGROUND

In Massachusetts, a person who wishes to carry a firearm outside his home or business must apply for a license to do so with the licensing authority in his city or town. *See* G.L. c. 140, § 131(d); *see also id.* § 121 (definition of "licensing authority").[2] A non-resident of the Commonwealth must also seek a license, which can be issued by the Colonel of the State Police or his designee, and which is evaluated against the same criteria that govern a resident's license application. *See* G.L. c. 140, § 131F. *Compare id.*, *with* G.L. c. 140, § 131(d). Under G.L. c. 140,

[2] In 2024, the Massachusetts Legislature passed a comprehensive overhaul of the State's firearms laws, most of which became effective in October, 2024. *See* St. 2024, c. 135. The licensing provisions at issue here remain unchanged in relevant respects, though some provisions were moved to different sections of the General Laws. *See* G.L. c. 140, §§ 121F, 121F(j), 121F(k) (general requirements for all firearms licenses, including "prohibited person" and "suitability" requirements, formerly codified at G.L. c. 140, 131(d)), added by St. 2024, c. 135, § 32; *see also* G.L. c. 140, § 131 (resident license-to-carry requirements), as amended by St. 2024, c. 135, § 49; G.L. c. 140, § 131F (non-resident license-to-carry requirements), as amended by St. 2024, c. 135, §§ 60-63. Crucially, under Mass. St. 2024, c. 206, § 51, changes to the Basic Firearms Safety course requirement reflected in St. 2024, c. 135, § 74, will not go into effect until April 2, 2026.

§ 131F, the licensing official "shall" issue a firearm license to an applicant "if it appears that the applicant is not a prohibited person and is not determined unsuitable to be issued a license as set forth in section 121F." G.L. c. 140, 131F; *see also id.* § 121F. A "prohibited person" is a person who is statutorily disqualified from obtaining a license to carry because, among other grounds listed in the statute, the person has been convicted of certain crimes including felonies, violent crimes, and misdemeanors punishable by imprisonment for more than two years; has been committed to a hospital or mental institution for mental illness, alcohol, or substance abuse; is the subject of an outstanding arrest warrant, is a fugitive from justice; or is under the age of 21. *See* G.L. c. 121F(j)((i)-(vi)); *see also* G.L. c. 140, § 131(d). An applicant is "unsuitable" if "based on reliable, articulable and credible information," the applicant "has exhibited or engaged in behavior that suggests that, if issued a license, the applicant [] may create a risk to public safety or a risk of danger to self or others." G.L. c. 140, § 121F(k); *see also id.*, § 131(d).

To allow the Colonel to assess whether the applicant is an unsuitable or prohibited person, the applicant is required to, among other things, submit their fingerprints, which are used to complete a criminal background check and which appear on the license itself. *Id.* § 121F(c), (d) & (i), *formerly codified at* § 131(e) & (g); 129(B)(2). To obtain a license, applicants must also demonstrate they have completed a certified firearms safety training course. *See* G.L. c. 140, § 131P(a);[3] *see also generally* 515 CMR 3.01 *et seq.* (certified program requirements). The fee

[3] Changes to G.L. c. 131P, including the new requirements imposed by G.L. c. 140, § 131P(b)(ii)((A)-(H)) will not go into effect until April 2, 2026. *See* Mass. St. 2024, c. 206, § 51 (Mass Stat. 2024, c. 135, §§ 38, 74 shall take place 18 months after the effective date of this Act.); *see also* Mass. Stat. St. 2024, c. 135, § 74 (changing the requirements of the basic safety course). The amendment, including the provision setting a new effective date for Section 74, took immediate effect upon the Governor's signing an emergency preamble on October 2, 2024. *See* Mass. Const., art. 48, The Referendum, pt. II (explaining emergency preamble procedure); Letter from Gov. Maura T. Healey to Sec'y of the Commonwealth William Francis Galvin (Oct. 2, 2024). Absent the emergency proclamation, the 18-month clock would not have started ticking (footnote continued)

for a license to carry is $100. G.L. c. 140, § 121F(i), *formerly codified at* § 131(i). The $100 fee for a license to carry has remained unchanged since 2003. *See* Mass. St. 2003, c. 26, § 428. Any applicant aggrieved by a denial of a license may seek judicial review of the denial within 90 days in the Massachusetts district court with jurisdiction over the city or town where they submitted their application. *Id.* § 131(f).

## PROCEDURAL BACKGROUND

On March 12, 2021, Plaintiff was indicted[4] on charges of: carrying a firearm without a license in violation of G.L. c. 269, § 10(a) (two counts, I and V); possessing ammunition without a Firearms ID ("FID") Card in violation of G.L. c. § 10(h)(1) (Count II); possessing a large capacity magazine in violation of G.L. c. 269, § 10(m) (Count III), and; assault with a dangerous weapon in violation of G.L. c. 265, § 15B(b) (Count IV). *See* Docket No. 2179CR00067 (Hampden County Super. Ct.). Plaintiff unsuccessfully moved to dismiss the charges on the grounds that he could not be prosecuted for unlicensed possession consistent with the Second Amendment. *See id.*, Dkt. ## 24-25, 33. After the Single Justice of the Appeals Court denied an interlocutory appeal from the denial of a motion to suppress, *see Commonwealth v. Kang Lu*, SJ-2022-0413 (Wendlandt, J.), Plaintiff went to trial; the jury found him guilty of Counts I and II, and not guilty of the remaining counts on June 23, 2023. *See* Docket, 2179CR00067. Plaintiff noticed an appeal on August 29, 2023. *See* Docket, 2179CR00067; *see also* Docket, *Commonwealth v. Kang Lu*, 24-P-0343 (Mass. App. Ct.). On September 18, 2024, the Appeals

---

for 90 days. *See* Mass. Const., art. 48, The Referendum, pt. 1 ("No law passed by the general court shall take effect earlier than ninety days after it has become a law.").

[4] This Court can take judicial notice of relevant court proceedings, including state court records. *See Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008); *see also United States v. Mercado*, 412 F.3d 243, 247-48 (1st Cir. 2005); *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990).

Court stayed the disposition of Plaintiff's criminal appeal pending the resolution of two cases in the Supreme Judicial Court ("SJC") considering the constitutionality of Massachusetts's non-resident licensing statute, *Commonwealth v. Marquis*, 495 Mass. 434 (2025) and *Commonwealth v. Donnell*, 495 Mass. 471 (2025).[5]

Plaintiff moved for post-conviction relief in Superior Court on April 4, 2025, on the ground that he had been indicted under the pre-*Bruen* version of § 131F, which had been invalidated by the SJC in *Donnell*. *See* Docket #120, 2179CR00067. The Commonwealth agreed, and thus did not oppose the dismissal of those charges. *See id.* #122. The Court granted Plaintiff's unopposed motion and entered a judgment of dismissal on Counts I and II on June 9, 2025. *See id*. The Appeals Court dismissed the criminal appeal at Plaintiff's request on July 2, 2025. *See* Docket, *Commonwealth v. Kang Lu*, 24-P-0343 (Mass. App. Ct.).

On September 15, 2022, while the criminal case was pending, Plaintiff filed a civil suit in state court against former Attorney General Maura Healey,[6] Hampden County District Attorney Gullini, and former secretary of the Executive Office of Public Safety and Security ("EOPPS")

---

[5] In *Marquis*, the SJC held that Massachusetts's current non-resident licensing statute does not violate the Second Amendment as interpreted by the Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 10-12 (2022), which had held that the right to keep and bear arms applies outside the home. *See Marquis*, 495 Mass. at 446-60. In *Donnell*, the SJC struck down an earlier version of § 131F (in effect prior to *Bruen*), on the ground that the pre-*Bruen* version of the statute had given excessive discretion to local licensing authorities to deny a non-resident license on the ground that the applicant lacked "good reason" for a firearm, in violation of *Bruen*. *See Donnell*, 495 Mass. at 475-81. The Massachusetts Legislature had amended both the resident and non-resident licensing statutes in 2022 in response to *Bruen*, to eliminate the "good reason" requirement for licensing, and to limit the discretion of licensing authorities to deny licenses to carry. *See* St. 2022, c. 175, §§ 6-22.

[6] The Parties later added Attorney General Campbell to the Docket as a successor in interest. *See* Docket # 27, 2284CV02125; *see also* Mass. R. Civ. P. 25(d)(1) (providing for the substitution of public officials upon separation from office).

Terrence Reidy.[7] *See* 2284CV02125 (Suffolk Super. Ct.). The first paragraph of Plaintiff's Complaint in that civil action stated, in relevant part: "I, Kang Lu, appear in my proper person to seek declaratory judgment that I have a right to keep and bear arms for personal use in Massachusetts; and, that no licensing requirement exists for that right[.]" *See* Compl. ¶ 1, 2284CV02125. The Court stayed consideration of motions to dismiss until after Plaintiff was convicted and then, on August 30, 2023, dismissed the action as an improper collateral attack upon his conviction, which was still on appeal at that time. *See* Dkt #29, No. 2284CV02125, at 1-2. In its Decision and Order, the Court stated:

> The court relies on the Commonwealth's Memorandum of Law as persuasive as to why the Motion to Dismiss should be allowed. Finally, the court notes that the state licensing scheme Plaintiff challenges has not been found by the Supreme Judicial Court nor the Supreme Court to be constitutionally defective. Even after *Heller* and its progeny, there remains a r[o]le for state and local governments to impose reasonable regulations that do not violate a citizen's second amendment right to bear a firearm. Additionally, the Plaintiff lacks standing to change the licensing statute because he has not demonstrated that he was wrongfully denied a license or FID card or that [he] even sought to obtain one.
> *Id*. at 2, n. 5.

On September 1, 2023, Plaintiff filed a separate suit against EOPPS, former Secretary Reidy, the Office of the Attorney General, and Attorney General Campbell in this Court. *See* Docket, 1:23-CV-12045. The allegations in that case are materially the same as the ones at issue

[7] This was Plaintiff's second attempted collateral attack of a criminal proceeding. On September 12, 2014, Plaintiff was arraigned on four charges, including a felony charge of carrying a dangerous weapon in violation of G.L. c. 269, § 10(b). *See* Docket, *Commonwealth v. Lu*, 1444CR001327 (Westfield Dist. Ct.). The Commonwealth entered a *nolle prosequi* on the dangerous weapon charge on September 23, 2014, and Plaintiff was found not responsible for the other charges on January 13, 2015. *See id*. On November 3, 2014, Plaintiff initiated a civil suit in Massachusetts state court against three judges and a prosecuting attorney, which was dismissed. *See* Docket, *Lu v. Vrabel et al*., 1479CV00837 (Hampden Super. Ct.). Defendant then sought to attack the State court judgment dismissing claims against the judges in federal court (the Complaint also added four Officers as defendants), which was also dismissed; the Court of Appeals for the First Circuit affirmed the dismissal on appeal. *See* Docket, *Lu and another v. Spencer et al.*, 15-CV-30162 (D. Mass.); *see also* Docket, *Lu and another v. Spencer et al.* (13-1381 1st Cir.).

in the present Complaint and the prior state court action. *See generally* Dkt #1, Compl., 1:23-CV-12045. Relying on principles of *Younger* abstention, the Court dismissed Plaintiff's case due to the pending criminal appeal in state court. *See* Dkt # 49 (Electronic Order). The Court did reach Plaintiff's challenge to G.L. c. 269, § 10(m) and summarily dismissed the challenge as inconsistent with *Bruen*, which "explicitly upheld such licensing schemes." *See* Dkt. # 49.

Plaintiff filed his Complaint in this action on December 3, 2025.

## FACTUAL BACKGROUND

The facts of the case are drawn from the Complaint, and are assumed to be true solely for the purpose of this motion to the extent the allegations are non-conclusory and non-speculative. *See, e.g., Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55-56 (1st Cir. 2012).

Plaintiff lives in New Hampshire. *See* Compl. ¶ 6. He also owns a farm in rural Massachusetts, *id.* ¶ 10, and frequently travels to Massachusetts. *Id.* ¶ 17. After the dismissal of his firearm-related charges in the Hampden County criminal case, authorities returned two handguns and five magazines of ammunition to him. *See* Compl. ¶ 14. As a result of that prior prosecution, he was detained for four days, subjected to GPS monitoring for 525 days, temporarily deprived of the ability to keep and bear arms, and had a harder time obtaining or maintaining employment for over five years. *Id.* ¶ 15. Plaintiff attempted to apply for a firearms license, but his application was denied for failure to pay the $100 licensing fee.[8] *Id.* ¶ 18 n. 6.

[8] The Court can take judicial notice of the fact Plaintiff did not move for leave to proceed *in forma pauperis* in this case, but instead paid the full $405 filing fee. In contrast, as noted, the state firearms licensing fee is $100, and the State Approved Worcester Police Department Firearms Responsibility and Safety Program costs $35. *See* Dkt #3; *see also* https://www.mass.gov/how-to/apply-for-or-renew-a-firearms-license; https://www.mass.gov/doc/approved-basic-firearms-safety-course-list-0/download; https://www.worcesterma.gov/police/permits-licensing/ltc-fid.

Plaintiff seeks a declaration that he may carry guns in public without first obtaining a license from the Commonwealth. *Id*. at ¶ 17. He contends that the licensing requirement is constitutional, but only insofar as it applies to "gunsmiths, security guards and other public safety and security professionals." *Id*. at ¶¶ 9, 23. Whereas Plaintiff concedes the Commonwealth may require a license of "private investigators, [and] security guards," *id*. at ¶ 31, just as it may for "common victualler[s]" and those who offer "child care," or "practice [] medicine," *id*. at ¶ 43, Plaintiff avers the licensing requirement applies to those who use firearms professionally but not those for whom it is an avocation. *Id*. at ¶ 25. Plaintiff contends Massachusetts law does not authorize defendants to require a firearms license from him. *See id*. at ¶¶ 24-32. He takes particular issue with fingerprinting and background check requirements. *See id*. at ¶¶ 29-30. Plaintiff also asserts that, because the licensing fee burdens the poor more than the rich, the fee violates the Equal Protection Clause in that it discriminates on the basis of wealth. *See id*. at ¶ 26.

## ARGUMENT

### Plaintiff's Complaint Fails to State a Claim Upon Which Relief May Be Granted

#### A. Standard of Review for Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6).

To survive a rule 12(b)(6) motion to dismiss, a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of a cause of action's elements." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 554, 555 (2007). Instead, the "[f]actual allegations" in the complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 556). The Court should disregard conclusory or "threadbare" allegations, speculation, "bald assertions," and "unsupportable conclusions." *See Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 595 (1st Cir. 2011). "In evaluating whether a

plaintiff has met this burden, [the Court must] accept the complaint's well-pleaded facts as true and indulge all reasonable inferences in the plaintiff's favor." *Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 33 (1st Cir. 2020) (quotation and bracket omitted). However, dismissal is appropriate if a plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations and original alterations omitted). Ultimately, "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, dismissal is proper." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (citation and internal quotations omitted).

### B. Plaintiff's Complaint Fails to State a Claim Against General Campbell in Her Personal Capacity and She is Entitled to Qualified Immunity.

Plaintiff's claim against Attorney General Campbell in her personal capacity[9] must be dismissed because it fails to identify any act or omission undertaken by her. *See Lewis v. Clarke*, 581 U.S. 155, 163 (2017) (claims run against a public official in their individual capacity when the individual official is the real party in interest); *Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 26 (1st Cir. 2007) (claims against a public official are not barred by the Eleventh Amendment when a damages award would come from the state official's own pockets); *Fantel v. Rhode Island*, No. CV 24-120, at *3 (D.R.I. Apr. 17, 2024) (citing *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016)) ("Plaintiff's complaint contains nothing suggesting any action or inaction by the Attorney General that conceivably could support a claim against him in his individual capacity."); *Hannon v. Beard*, 979 F. Supp. 2d 136, 142 (D. Mass. 2013) (dismissing claims against Governor in

[9] To the extent this Court might Secretary Kwon is sued in her individual capacity, this argument applies to her with full force. *See supra* n. 1.

personal capacity because "Plaintiffs' claims against Romney are no more than vague allegations against a distant public figure."); *see also Brown v. Rhode Island*, 511 Fed. App'x 4, 5 (1st Cir. 2013) (dismissing claims against governor in personal capacity "plaintiff has not alleged any direct actions taken by either of those defendants"); *Davis v. Coakley*, 802 F.3d 128, 132 (1st Cir. 2015) (affirming dismissal against Attorney General in personal capacity for failure to state a claim).

To the extent Plaintiff somehow stated a claim against Attorney General Campbell (or Secretary Kwon), they are protected by qualified immunity because Plaintiff fails to identify a breach of clearly established law of which a reasonable official would have known.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow* v. *Fitzgerald,* 457 U.S. 800, 818 (1982)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna,* 577 U.S. 7, 12 (20 15) (per curiam) (quoting *Malley* v. *Briggs,* 475 U.S. 335, 341 (1986)). Courts are instructed not to evaluate whether an officer violated clearly established law by phrasing the question at a high level of generality. *See Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011). Once qualified immunity is raised, the burden shifts to the Plaintiff to show that it doesn't apply. *See Escalera-Salgado v. United States,* 911 F.3d 38, 41 (1st Cir. 2018). Qualified Immunity is the right not just to be shielded from liability, but from suit itself. *See Pearson,* 555 U.S. at 231-32 (quoting *Mitchell* v. *Forsyth,* 472 U.S. 511, 526 (1985) and *Anderson v. Creighton,* 483 U.S. 635, 640, n. 2 (1987)).

Here, Plaintiff has not demonstrated that Attorney General Campbell (or Secretary Kwon) violated settled law that was sufficiently clear that every reasonable official would have

known they were violating it. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (thorough explanation of when the law is clearly established). That showing would be impossible where a panoply of judges have peremptorily dismissed the claim's substance. [10]

### C. Plaintiff's Complaint Fails to State a Claim on the Merits Because the Supreme Court Has Made Clear that States May Impose Licensing Requirements, Including Fees, for Carrying Firearms Without Violating the Second Amendment.

The Second Amendment provides "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amd. II. This text has been interpreted to secure an individual right for those considered "the people" to bear arms for self-defense, *see District of Colombia v. Heller*, 554 U.S. 570, 635 (2008), outside of the home, *see New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 10 (2022); this right is applicable against the states. *See McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010). To assess a claim of right under the Second Amendment, courts first discern whether "the Second Amendment's plain text covers [the] individual's conduct[;]" if so,

---

[10] Additionally, many of the harms identified in Plaintiff's Complaint happened in the past. Compl. ¶ 15. The Eleventh "amendment (despite its literal text) [] bar[s] a citizen from bringing a federal court action against his or her own State," *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 48 (1st Cir. 2003) (citation and footnote omitted), including state agencies, *see Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429-30 (1997), and state officials sued in their official capacities, *see Mills*, 118 F.3d at 54. The Eleventh Amendment, therefore, generally guarantees that "non-consenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (citation omitted); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The *Ex parte Young* exception to the Eleventh Amendment, which allows a litigant to seek prospective injunctive relief against state officials in their official capacity, 209 U.S. 123, 154 (1908), is inapplicable when a litigant seeks to subject the state to suit for past harms by reframing the effects as ongoing. *See Cotto v. Campbell*, 126 F.4th 761, 767-772 (1st Cir. 2025). To the extent Plaintiff seeks redress for past harms, this Court cannot provide relief to address those harms, even to issue declaratory relief. *See Cotto*, 126 F.4th at 767-772; *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Edelman v. Jordan*, 415 U.S. 651, 665 (1974) (federal court lacks jurisdiction to "make reparation for the past" by entertaining suit against a state) (quotation and citation omitted).

regulation is permissible if it is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17.

Importantly, the Court in *Bruen* emphasized that it is constitutionally permissible for states to impose a licensing requirement to keep and carry a firearm, stating that "nothing" in its decision "should be interpreted to suggest the unconstitutionality of" so-called "shall issue" firearm licensing regimes which, like G.L. c. 140, § 131F, "do not require applicants to show an atypical need for armed self-defense." 597 U.S. at 38, n. 9; *see also id*. at 14 n.1 (listing state shall-issue licensing statutes).[11] Rather, such licensing regimes, "which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens," and are thus fully consistent with the Second Amendment. *Id.* (citation and quotation omitted). Likewise, in a concurring opinion in *Bruen*, Justice Kavanaugh, joined by Chief Justice Roberts, highlighted that the Court's decision "does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense" and that firearm licensing regimes that "may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements" "are constitutionally permissible." *Id.* at 79-80 (Kavanaugh, J., concurring); *see also Commonwealth v. Loadholt*, 460 Mass. 723, 725-26 (2011) (unequivocally rejecting the argument that the Second Amendment bars state licensing laws). Applying these clear

[11] When *Bruen* was decided, Massachusetts had a "may issue" licensing scheme which, like the New York "proper cause" law struck down in *Bruen*, required applicants to demonstrate a "good reason" to carry a firearm in public, such as a specific, individualized public safety concern that was unique to the person and not shared by the public at large. *See Bruen*, 597 U.S. at 13-14 & nn.1-2. As noted, however, after *Bruen*, the Massachusetts Legislature amended its licensing statute to eliminate the good reason requirement, and to convert its licensing statute to a "shall issue" statute. Massachusetts's law is therefore now like the 43 state laws that the Supreme Court cited with approval in *Bruen*. *See* 597 U.S. at 13 n.1, 38 n.9.

commands, lower court decisions have established beyond peradventure that Massachusetts' licensing regime, and the regimes of other states that followed *Bruen*'s guidance and enacted "shall-issue" licensing, comply with the Second Amendment. *See, e.g.*, *Ritrovato v. Donovan*, No. 23-cv-10820-DJC, 2025 U.S. Dist. LEXIS 43662, at *9 (D. Mass. Mar. 11, 2025); *see also supra* n. 5; *Powell v. Tompkins*, 926 F. Supp. 2d 367, 380 (D. Mass. 2013), *aff'd*, 783 F.3d 332 (1st Cir. 2015) ("this Court holds that the imposition of licensure as a predicate to possessing and carrying a firearm in the Commonwealth does not vitiate Powell's core Second Amendment right to keep and bear arms.") (abrogated on other grounds by *Bruen*); *Kwong v. Bloomberg*, 723 F.3d 160, 161-72 (2d Cir. 2013) (New York's $340 licensing fee for a three year handgun permit is consistent with the Second Amendment); *McRorey v. Garland*, 99 F.4th 831, 839 (5th Cir. 2024) (upholding presumptively constitutional background check requirement); *Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211, 216-17, 222-23, 225-229 (4th Cir. 2024) (en banc) (rejecting Second Amendment challenge to Maryland's firearms licensing statute, which include a background check, fingerprinting, a training requirement, wait time, and a $50 licensing fee); *United States v. Peterson*, 161 F.4th 331, 339 (5th Cir. 2025) (rejecting as-applied challenge to fingerprint and background check requirements in shall issue licensing regime).[12]

---

[12] To the extent Plaintiff challenges Massachusetts's $100 licensing fee as "exorbitant," *see Bruen*, 597 U.S. at 38 n.9 (reserving possibility of an as-applied challenge to an exorbitant licensing fee or excessive wait time), Massachusetts's licensing fee—which has remained unchanged since 2003—fits comfortably within the range of fees around the country, which vary from as little as $10 to as much as $500. *See generally* Connecticut Office of Legislative Research, Gun Permit & License Fees, at tbl.1 (Jan. 9, 2023) (collecting state statutory licensing fees), https://www.cga.ct.gov/2017/rpt/pdf/2017-R-0066.pdf.

### D. Plaintiff Fails to State a Claim that the Firearms Licensing Regime Violates the Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment provides that "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amd XIV, § 1, cl. 2. Where a law does not draw a distinction based on a "suspect classification," like race, religion, or national origin,[13] courts review only to see if a law is rationally related to a legitimate state interest. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440-42 (1985) (distinctions drawn between non-suspect classes are reviewed to see if they are rationally related to a legitimate state interest); *see also San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973) (poverty is not a suspect classification); *Harris v. McRae*, 448 U.S. 297, 323 (1980) (Court has "held repeatedly that poverty, standing alone is not a suspect classification"); *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) ("Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest."); *United States v. Myers*, 294 F.3d 203, 209 (1st Cir. 2002) ("wealth is not a suspect classification for purposes of the Equal Protection Clause.").

When rational-basis review applies, a court will indulge every presumption in favor of the enactment, upholding it so long as it is reasonably related to a permissible government objective. Under this forgiving standard, courts will uphold a statute so long as there is "any reasonably conceivable state of facts that could provide a rational basis for the classification."

[13] Heightened scrutiny may also apply if a law implicates a "fundamental right" in addition to a suspect classification. But where a law does violate the Second Amendment, courts will apply rational-basis review to the companion Equal Protection claim. *E.g., Hightower*, 693 F.3d at 83 ("Given that the Second Amendment challenge fails, the equal protection claim is subject to rational basis review.").

*FCC v. Beach Comms., Inc.*, 508 U.S. 307, 313 (1993). Where there exist "plausible reasons" for the relevant government action, a court's inquiry "is at an end." *Id.* at 313-14. In fact, because "a court applying rational basis review may go so far as to hypothesize about potential motivations of the legislature, in order to find a legitimate government interest sufficient to justify the challenged provision," *Gill v. Office of Personnel Mgmt.*, 699 F. Supp. 2d 374, 387 (D. Mass. 2010) (footnote omitted), Plaintiff bears the burden "to negative every conceivable basis which might support it." *Beach Comms.*, 508 U.S. at 315 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364 (1973)).

Here, a rational legislature could reason that licenses are necessary to keep the public safe and impose a reasonable fee to administer the licensing program; therefore, the licensing fee complies with the Equal Protection Clause. Plaintiff cannot demonstrate, and does not plausibly allege, that being required to pay a $100 licensing fee deprives him of equal protection of the laws. *See Gould v. O'Leary*, 291 F. Supp. 3d 155, 174 (D. Mass. 2017), *aff'd sub nom. Gould v. Morgan*, 907 F.3d 659 (1st Cir. 2018), *cert denied* 590 U.S. 991 (2020) ("Here, [Massachusetts' firearms licensing] classification does not impermissibly interfere with the exercise of a fundamental right, and there is no suspect class at issue.") (abrogated on other grounds by *Bruen*); *see also Bruen*, 597 U.S. at 38, n. 9 (firearms licensing fees are unconstitutional only if exorbitant); *Ritrovato v. Donovan*, No. 23-CV-10820-DJC, 2025 WL 777216, at *5 n. 3 (D. Mass. Mar. 11, 2025) (a plaintiff must plausibly allege licensing fees are exorbitant); *Mills v. New York City, New York*, 758 F. Supp. 3d 250, 267 (S.D.N.Y. 2024) (same); *Watterson v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 4:23-CV-00080, 2024 WL 897595, at *19 (E.D. Tex. Mar. 1, 2024) (upholding the imposition of a $200 fee as not "exorbitant"); *Air Sunshine, Inc. v. Carl*, No. : 09-2019 (MEL), 2010 U.S. Dist. LEXIS 126238, at *7 n.1 (D.P.R.

Nov. 30, 2010) (ignoring allegations that are contradictory and implausible on their face), *rev'd on other grounds*, 663 F.3d 27 (2011); *supra* n. 8.

## CONCLUSION

For the above-stated reasons, the Defendants respectfully request this Court dismiss Plaintiff Kang Lu's Complaint in its entirety, with prejudice.

Respectfully Submitted,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL
AND
GINA K. KWON
SECRETARY OF PUBLIC SAFETY AND SECURITY

By their attorney,

/s/*Mathias F. Fressilli*
Mathias F. Fressilli
Assistant Attorney General
Constitutional and Administrative Law Div.
One Ashburton Pl., 18th Floor
Boston, MA, 02108
(617) 963-2907
Mathias.Fressilli@Mass.gov

January 20, 2026

<u>CERTIFICATE OF COMPLIANCE WITH RULE 7.1</u>

I, Mathias Fressilli, certify that Mr. Lu and I discussed my motion in a phone call around 2:50 PM on February 20, 2026 and despite a good faith conferral were unable to narrow the scope of disagreement.

<u>CERTIFICATE OF SERVICE</u>

I, Mathias Fressilli, certify that this document, filed through the Court's ECF system, will be sent electronically to registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to non-registered participants at the email listed below on January 12, 2026.

Kang Lu, *pro se*
5753 Highway 85 North #2442
Crestview, FL, 32536
LibertyWithoutLicense@gmail.com

*/s/ Mathias Fressilli*
Mathias Fressilli
Assistant Attorney General