# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

Kang Lu
*Plaintiff*,

*v*.

GINA K. KWON, in her official capacity as Secretary of the Executive Office of Public Safety and Security ("EOPSS"), ANDREA JOY CAMPBELL, in her official capacity as Attorney General of Massachusetts,

*Defendants*.

Civil Action No. 25-13649-AK

COMPLAINT

FOR

DECLARATORY JUDGMENT

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### Introduction

1. I, Kang Lu, appearing *in propria persona*, respectfully submit this Opposition to Defendants' Motion to Dismiss (Doc. No. 16). This action seeks a declaratory judgment regarding the proper legal application of the Massachusetts firearms licensing scheme, as applied to my individual right "to keep and bear Arms" secured by the **Second Amendment** to the **United States Constitution**. Defendants' motion should be denied because the Complaint plausibly alleges an actual and immediate controversy, sets forth well-pleaded facts demonstrating a concrete and threatened conflict over legal rights, and satisfies the pleading standards of **Fed. R. Civ. P. 12(b)(6)**.

## Legal Standard

2. A motion to dismiss under **Fed. R. Civ. P. 12(b)(6)** tests the legal sufficiency of the complaint, not the merits of the case. To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 570 (2007). A claim is plausible when the pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. See ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009).

3. Following this standard, courts use a two-step approach. First, while well-pleaded factual allegations are accepted as true, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" are not. ***Iqbal***, 556 U.S. at 678. Second, the court determines whether the factual allegations plausibly give rise to an entitlement to relief, drawing on judicial experience and common sense. ***Id***. at 679.

4. As applied to declaratory judgment actions under **28 U.S.C. § 2201**, the plaintiff must allege an "actual controversy" within the meaning of **Article III**. An actual controversy exists where there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." ***MedImmune, Inc. v. Genentech, Inc.***, 549

U.S. 118, 127 (2007), quoting ***Maryland Casualty Co. v. Pacific Coal & Oil Co.***, 312 U.S. 270, 273 (1941).

5. At the pleading stage, the plaintiff need only allege facts showing a concrete and immediate dispute concerning the parties' legal rights and obligations. The Court's role at this stage is not to resolve the ultimate merits of the parties' competing legal positions, but only to determine whether the complaint plausibly alleges the existence of such a live controversy.

6. Accordingly, dismissal is improper where the complaint's well-pleaded factual allegations, taken as true and construed in the plaintiff's favor, plausibly show the existence of an actual controversy and state a claim for declaratory relief.

**Argument I — Claim and Actual Controversy**

7. The Complaint states an actual, present, and justiciable controversy under **28 U.S.C. § 2201**, which should be resolved without adjudicating the broader validity of the statutes themselves, because it challenges only the Defendants' application and enforcement of otherwise valid laws. I have suffered concrete injuries by Defendants' enforcement, which are traceable to and redressable by the requested declaratory relief. I have a present intention to exercise my constitutional rights, the parties' interests are adverse, and the dispute is ripe for adjudication:

8. **First**, I have suffered, and continue to suffer, concrete and particularized injury as a direct and proximate result of Defendants' actions. As alleged in the Complaint, I was subjected to arrest, prosecution, pretrial detention, prolonged GPS monitoring, a jury trial, and the seizure of my Arms under Defendants' enforcement of the licensing scheme as applied to my conduct.

9. Notwithstanding my acquittal, the FBI's determination of my eligibility to have a firearm, and the trial court's return of my arms for personal use, the Defendants have neither disavowed nor limited their purported authority to arrest, prosecute, or seize my property again should I attempt to exercise my right "to keep and bear Arms" without their license.

10. **Second**, my injuries are fairly traceable to Defendants' allegedly unlawful conduct because they are responsible for administering and enforcing the licensing scheme, and they have previously caused and continue to threaten to cause the deprivation of my rights, under color of state law, through arrest, prosecution, and seizure of my property, giving rise to a claim under **42 U.S.C. § 1983**.

11. **Third**, my injuries are redressable because a declaratory judgment would resolve the legal uncertainty governing my conduct and clarify the parties' rights and other legal relations. While the law authorizes Defendants to enforce the State's firearms licensing scheme against professionals in "specified occupations," no statute subjects my constitutionally and statutorily secured right "to keep and

bear Arms" for "the lawful defense of life or property" to licensure. Absent declaratory relief, I must choose between exercising my right to lawful self-defense and subjecting myself to a credible threat of criminal prosecution, which is precisely the dilemma declaratory relief is intended to redress.

12. **Fourth,** I claim a present and definite intention to engage in conduct protected by the **Constitution**, including my right "to keep and bear Arms" peaceably and lawfully for self-defense and farming purposes during my frequent travels into Massachusetts, in the same manner as I do in New Hampshire and other states where such conduct is not prosecuted in the absence of a license.

13. **Fifth**, the parties have adverse legal interests of sufficient immediacy to constitute an actual controversy: I assert a constitutional right "to keep and bear Arms" for which there is no explicit licensing requirement, while the Defendants claim *ultra vires* authority to impose criminal penalties against me in excess of their licensing "authority to impose occupational fees or licensing requirements on a profession." See **G. L. c. 6, § 172N**.

14. **Sixth**, this controversy is ripe for adjudication because it arises from prior enforcement and Defendants' ongoing misapplication of their licensing authority. The dispute is neither contingent nor speculative, and the threatened injury is immediate and real, as I must choose between complying with unconstitutionally applied "licensing requirements on a profession" or facing criminal penalties.

**Argument II — As-Applied Challenge**

15. My Complaint is an as-applied challenge and does not allege that "[the] Massachusetts' firearm licensing statute is unconstitutional … because … the requirement that [I] obtain a firearms license violates [my] Second Amendment right to keep and bear arms," as Defendants assert in their Memorandum in Support of their Motion to Dismiss at 1, Doc. 16-1. I have never disputed that the State may impose a fee or other requirements for carrying a firearm, including "fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." See *id*. at 12, quoting Justice Kavanaugh's concurrence in ***New York State Rifle & Pistol Ass'n v. Bruen***, 597 U.S. 1 (2022) ("***Bruen***").

16. The State may undoubtedly license the carrying of firearms, and "nothing in [the ***Bruen***] analysis should be interpreted to suggest the unconstitutionality of 'shall-issue' licensing regimes … That said, because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes." See ***id***. at 30 n.9; see also Kavanaugh, J., concurring, at 2 ("shall-issue licensing regimes are constitutionally permissible, subject, of course, to an as-applied challenge").

17. The Defendants, acting as government officers, are "abusive" when their actions are arbitrary, capricious, not in accordance with law, or contrary to a

constitutional right; in excess of statutory authority or limitations; or taken without observance of procedure required by law. See **5 U.S.C. § 706**; see also ***Koon v. United States***, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law.").

18. In this case, the Defendants' claimed authority to license my individual right "to keep and bear Arms" for farming, personal use, or lawful self-defense is not supported by existing legislation. As indicated in my Complaint, and not disputed by the Defendants, every requirement for obtaining a license to carry firearms is confined to a professional or occupational activity. See "occupational fees," **G. L. c. 6, § 172N**; "professional licensing," **803 CMR 2.01**; and "specified occupations," **G. L. c. 6, § 172B.5**, referenced in Complaint, Doc. 1 ¶¶ 24, 28, 30.

19. Contrary to Defendants' claims of licensing authority, the law prescribes no clear legislative authorization for licensing: the use and transportation of shotguns, rifles, revolvers, and pistols "to or from the commonwealth" for killing animals damaging crops on farm property, see **G. L. c. 131, §§ 37**, **66**, **67**, **78**; the "arms for personal use," see **G. L. c. 62C, § 55A**; the "lawful defense of life or property," see **G. L. c. 269, §§ 12G**, **12E**; self-defense against "great bodily injury or death," see **G. L. c. 278, § 8A**, and **G. L. c. 231, § 85U**, or rendering aid by persons in arms to magistrates and officers for preservation of the public peace, see **G. L. c. 269, § 4**.

20. In short, governmental powers, like the State's authority to license firearms, are not unlimited. It is not a power to license any Arms whatsoever, in any manner whatsoever, and for whatever purpose. A review of the **Constitution**, the **General Laws**, and even the licensing regulations themselves reveals no clear authorization to license "the right of the people to keep and bear Arms" for the security of a free State, the common defence, lawful defense of life, assisting magistrates or officers in preserving the public peace, hunting to feed oneself, or for personal use.

21. These limitations underscore the question presented for declaratory relief: whether the Defendants' licensing authority is limited under the relevant statutes, including **G. L. c. 6, § 172N**, "to impose occupational fees or licensing requirements on a profession," or whether the existing legislation subjects my fundamental, constitutionally secured right "to keep and bear Arms" to a license. Accordingly, declaratory judgment is appropriate to resolve this question.

**Argument III — Defendants' Mischaracterization**

22. Defendants mischaracterize my Complaint. I did not challenge the "fingerprinting and background check requirements," see Doc. 16-1 at 8, nor did I assert that the "firearm licensing statute is unconstitutional as applied to [me] because … the requirement that [I] pay a $100 license fee violates the Equal Protection Clause of the Fourteenth Amendment." See *id*. at 1.

23. My Complaint recognizes that the "Purpose and Scope" of background checks is limited to "the purpose of evaluating applicants for employment, volunteer opportunities, or professional licensing," that fingerprint submission is required only from "applicants for licenses in specified occupations," and that the licensing fee is intended as "a requirement on a profession," not as a charge for the exercise of a constitutional right. See Complaint, Doc. 1 ¶¶ 24, 26, 28, 30 (citing **803 CMR 2.01**, **G. L. c. 6, § 172B.5**, and **G. L. c. 6, § 172N**). These allegations do not assert a violation of the **Second** or **Fourteenth Amendments**; rather, they demonstrate that the existing statutes regulate professionals in specified occupations and do not presumptively subject my fundamental, constitutionally secured rights to a license.

24. By framing the Complaint as a facial challenge, Defendants attempt to shift the focus away from the *ultra vires* nature of their claimed authority. The well-pleaded facts instead present a concrete and immediate controversy: Defendants assert the power to enforce criminal penalties based on licensing requirements that exceed statutory authorization, creating a live and ongoing risk of prosecution. This is precisely the type of as-applied legal dispute that is justiciable under **28 U.S.C. § 2201** and appropriate for declaratory relief to clarify the parties' legal rights. In such circumstances, courts must remain vigilant "to prevent violations of the Constitution by circuitous and indirect methods. Constitutional provisions for

the security of person and property are to be liberally construed, and 'it is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.'" ***Byars v. United States***, 273 U.S. 28, 32 (1927).

**Alternative Request for Leave to Amend**

25. In the alternative, if the Court finds any deficiency in my Complaint, I respectfully request leave to amend pursuant to **Fed. R. Civ. P. 15(a)(2)**. Upon amendment, I can clarify the factual allegations, more precisely identify the legal bases for relief, and address any deficiencies identified by the Court.

26. Amendment would not be futile, and it would not cause undue delay or prejudice to Defendants. Accordingly, if the Court is inclined to grant Defendants' Motion to Dismiss in whole or in part, I respectfully request that such dismissal be without prejudice and with leave to amend.

**Conclusion**

27. **WHEREFORE**, I respectfully request that this Honorable Court deny Defendants' Motion to Dismiss, or in the alternative grant leave to amend.

Dated: March 25, 2026.

Respectfully submitted,

/s/ Kang Lu

Kang Lu, *in propria persona.*

Certificate of Service

I hereby certify that a true and correct copy of the foregoing **Opposition to Defendants' Motion to Dismiss** was filed and served upon counsel for Defendants (*Mathias.Fressilli@mass.gov*) via the Court's CM/ECF system.

Dated: March 25, 2026.

Respectfully submitted,

*/s/ Kang Lu*

Kang Lu, *in propria persona.*
5753 Highway 85 North, #2442
Crestview, Florida, 32536
*LibertyWithoutLicense@gmail.com*
Phone: 413-300-2102.